## RALPH WRIGHT v. D. A. JACOBS.

(Filed September 2, 1902.)

**ORGANIZATION OF CITY OF THE FIRST CLASS—First Officers Elected Entitled to Hold Till When—Annual Election.** By section 544 of the Statutes of 1893, and as amended by the act of March, 12, 1897, which fixes the term of mayor, city clerk, police judge, city treasurer, city attorney, city marshal, city assessor, treasurer of the school board, street commissioner, and one councilman and one member of the school board from each ward, at two years each, and providing for their election on the odd numbered years, where a city is by the governor proclaimed under the statute to be a city of the first class, and an election of a full complement of officers is had after the time for the annual election in 1901, but before the time for the annual election in 1902, the officers above named, in the absence of a city ordinance providing for annual election of its officers, are entitled to hold their respective offices until the spring election of 1903. As the terms of the officers above-named expire on the first Tuesday in April of the odd numbered years regardless of the time of their election or appointment, and

the provision in section 541 of the Statutes to the effect that the officers who are elected at the first election of a city of the first class shall hold until the next annual election, only means that the officers whose terms, under the provisions of section 544, expire at the next annual election, shall be elected at that time. Section 544, referred to above, in so far as it relates to the terms of the officers of cities of the first class, being enacted with express reference to that matter, will prevail over section 541 where the two sections are in conflict.

(Syllabus by the Court.)

*Original Proceeding in Mandamus.*

*J. A. Baker* and *J. C. Strang,* for relator.

*Rice, Mitschrich & Rice,* for respondent.

One A. J. Vollers, was on October 24th, 1901, at the first election held in the city of Lawton after it was proclaimed by the governor of the Territory of Oklahoma to be a city of the first class, duly elected city clerk. Some time after that he left the city, and one D. A. Jacobs was duly appointed to fill the vacancy thus caused: Held, that Jacobs is entitled to continue in the discharge of such office, and to receive the emoluments thereof until the annual election of 1903; and that the city has no power to elect another to such office until that time, and any election held for that purpose is void.

Opinion of the court by

BURWELL. J.: This is an original action of mandamus, commenced in this court by Ralph Wright against D. A. Jacobs, and the petition alleges in substance that on or about the 1st day of September, 1901, the facts necessary were made known to the governor of the Territory of Oklahoma showing that the requisite number of people were then residing upon the townsite of the present city of Lawton, in the county of

Comanche, to entitle them to incorporation, under the laws of the territory as a city of the first class; that on or about the 28th day of September, 1901, the governor of Oklahoma issued his proclamation under the laws of the territory, declaring the city of Lawton to be a city of the first class and dividing the city into four wards, which proclamation was duly issued and published; that by proclamation duly signed, issued and published, the governor caused a special election to be held in and for the city of Lawton on the 24th day of October, 1901, at which election a mayor, city clerk, police judge, city treasurer, city attorney, street commissioner, city marshal, and eight councilmen were elected for said city, to serve until the next annual election, and until their successors were elected and qualified; that each and every one of the persons elected at said election on the 24th day of October, 1901, soon thereafter, towit: On Thursday, October 26th, 1901, appeared and qualified and entered upon the discharge of the duties of their respective offices; that at said election one Louis A. J. Vollers was elected city clerk for the city of Lawton, and that on the 26th day of October, 1901, said Vollers qualified and gave bond, and entered upon the duties of his office, receiving the honor and emoluments of such office; that the salary of said office was by ordinance fixed at $75.00 per month; that on or about the 23rd day of March, 1902, said Vollers disappeared from said city of Lawton and has not been seen or heard of in said city since that date, and a vacancy was declared to exist in said office of city clerk, and the defendant D. A. Jacobs, was duly appointed to fill the vacancy and immediately qualified and entered upon the discharge of the duties of such office, receiving the salary and emoluments thereof; that during the month of March, 1902, the two political

parties, the democratic party and the republican párty, each
after holding their separate primary election in each of the
four wards of the said city on different days, regularly met in
regular separate conventions on the following dates:   The
republicans on the 20th day of March, 1902, and the demo-
crats on the 22nd day of March, 1902, and each convention
nominated a full ticket for all of the city officers, towit:
Mayor, city clerk, police judge, city treasurer, city attor-
ney, city marshal, street commissioner, and eight council-
men, two from each ward in the said city, two members of the
school board from each ward, and a treasurer of the school
board, to be voted for and elected on the first Tuesday of
April, being the 1st day of April, 1902, the time fixed by law
for holding the annual election for cities of the first class;
that there was great interest manifested in said election by
all the citizens of said city of Lawton, both before and on
the day of the election, and that on said election day the elec-
tion was participated in generally by the qualified electors
of said city, and that one thousand four hundred and fifty-
seven votes were cast at said election, which was and is con-
sidered almost a full vote of the qualified electors of said
city; that instead of issuing a proclamation calling an election
for all of the officers of said city, as it was his duty under the
law to do, the mayor issued a proclamation, a copy of which
is attached to the petition and made a part thereof, calling an
election for only one member of the council and one mem-
ber of the school board, from each ward of said city of Law-
ton, and appointing the supervisors, judges and clerks and
naming the polling places in said city; that the official bal-
lots used at said election were regularly prepared by the city
clerk of said city, and one democrat and one republican reg-

ularly chosen, which persons constitute the board which was by law authorized to prepare the official ballots for said election and that on said ballots were the names of all of those who were legally nominated by the respective political parties for the different offices; and the petition then sets out in full the names of all of the persons nominated for the different offices, including the names of the candidates for city clerk; that such ballots were voted by one thousand four hundred and fifty-seven electors of said city; that the election was legally and regularly held at the time and places required by law and fixed by the mayor's proclamation; that at such election plaintiff's name was on said official ballot as the democratic nominee and candidate for city clerk of the city of Lawton, and Harry Roach's name was on said ballot as the republican candidate for said office of city clerk, and that each was voted for for said office by the electors voting at said election; and upon a canvass of the returns it was found that the plaintiff had received seven hundred and sixty-two votes, and that Roach had received six hundred and twenty-two votes, and that no other candidates were voted for at said election for the office of city clerk, and plaintiff was declared duly elected for one year and until his successor should be elected and qualify; that plaintiff was at the time of the election a citizen of the United States and a citizen and resident of the city of Lawton, and had been for more than six months previous to such election, and was then and is now a duly and legally qualified elector in said city and then and now has all the qualification required by law to hold the office of city clerk of the city of Lawton; that after he was declared elected at the said election by the board of canvassers of the returns thereof, plaintiff took the oath of office, gave bond as

required by law, and demanded of defendant to be let into such office, and that the defendant turn over to plaintiff the books, records, seal and all insignia and official belongings of the office, but all of which defendant refused to do, but still remains in possession of said office, and receives the emoluments thereof.

The petition prays that the defendant be required to issue to the plaintiff a certificate of election, and that he be ousted from said office, and that he be required to turn over to the plaintiff the books, blanks, records, seal and other paraphernalia of such office.

To this petition the defendant filed a general demurrer, on the ground that the petition fails to state a cause of action. On these pleadings the cause is submitted for judgment. It is the contention of the plaintiff that under the statute that all of the officers of the city should be elected at the annual election in the spring of 1902, and that the first officers elected when the city was organized could only hold until that time, while the defendant contends that all of the city officers elected on October 24, 1901, at the organization of the city, are entitled to hold their respective offices until the annual election in 1903, except one member of the city council and one member of the school board from each ward who should be, and who was, elected at the annual election in the spring of 1902; and the reasoning in this opinion will be confined to these respective positions.

In determining this controversy it will be necessary in order to more clearly understand the reasons for each position, to notice the provisions of our statutes.

The Statutes of 1893 in section 537, page 160, provide:

"All cities, towns, villages or communities of people re-
siding in compact form in this territory, having a popula-
tion of over twenty-five hundred inhabitants, as shown by
the last census taken thereof, and residing upon land platted
into lots and blocks (shall), upon taking effect of this act,
become municipal corporations and be governed by the pro-
visions hereof, upon compliance with the provisions of this
act. And all cities, towns, villages or communities of people,
in this territory, that shall hereafter attain to such popula-
tion, shall, upon such population being ascertained by the cor-
porate authorities thereof, and in case they are without corpo-
rate authorities, then by persons they may select for that
purpose, and certified to the governor of the territory, be by
him declared by proclamation, to be cities of the first class,
and from and after such proclamation, shall be governed by
the provisions of this act."

This section was complied with, and Lawton was by the
governor of Oklahoma declared, by proclamation, to be a city
of the first class, and pursuant to section 541 of the same
statute, an election was called.

Section 541 page 161:

"Within thirty days after the filing (of) a petition sign-
ed by a majority of the legal voters of such proposed city,
with the governor, praying for organization under this act,
the governor of the territory, shall call a special election in
such city, to be governed hereby, at which election a mayor,
city clerk, police judge, city treasurer, city attorney, and as-
sessor and eight councilmen, shall be elected to serve until the
first annual election in such city, and until their successors are
elected and qualified."

Then the section provides how the election shall be call-
ed, how held, how the votes canvassed, and the certificates

of office issued. It is upon this section of the statute that the plaintiff relies for a recovery and particularly upon that latter part of the section which, after naming the officers to be elected, states that they "shall be elected to serve until the first annual election in such city, and until their successors are elected and qualified."

If we were to stop here and read no further plaintiff's contention would seem to be correct, but there is something additional which has not yet been taken into consideration, and that is the section of the statute which provides for the annual election. It is section 544 of the Statutes of 1893, page 162, and as originally enacted reads as follows:

"The annual election, in cities of the first class, shall be held on the first Tuesday in April, 1891, and each year thereafter. At the annual election, in 1891, there shall be elected a mayor, city clerk, police judge, city treasurer, city attorney, city assessor, treasurer of the school board, one councilman and one member of the school board from each ward, who shall hold their offices for two years, and one councilman and one member of the school board, from each ward, who shall hold their offices for one year, all officers elected, thereafter shall hold their offices two years, and until their successors are elected and qualified."

This section provides for the annual election, and then goes further and says that at the annual election in 1891 there shall be elected a mayor, city clerk, police judge, city treasurer, city attorney, city assessor, treasurer of the school board, one councilman, and one member of the school board from each ward, who shall hold their offices for two years, and one councilman and one member of the school board from each ward who shall hold their offices for one year, and that all officers elected, thereafter, shall hold their offices two years, and until their successors are elected and qualified.

10 - Vol 12

This section of the statute fixes the terms of officers, and was enacted at the same time as section 541, and we think it may be said that there is an apparent conflict between these two sections when considered in connection with the case at bar, and therefore it is, under all rules of law, the duty of the court to hunt for a construction that will, if possible, give force to every part of each section, as it will be presumed that the legislature intended to make a law that is consistent, and one in which the courts can give force to each and every part thereof. This cannot be done if plaintiff's theory is adopted, because section 544 fixes the terms of all offices of cities of the first class after the election in 1891 at two years, and section 541 provides that the officers elected at the first election of a city of the first class shall hold only until the next annual election, but notwithstanding the theory of defendant we are clearly of the opinion that "annual election" as used in the statute, means, "yearly election"—therefore the necessity of applying the old rule, that statutes *in pari materia* must be construed together. And when this is done the statute is reasonable.

It was under the most unfavorable conditions that the legislature did its work during the first session and laws were enacted which conflicted with others, and even one section of an act, when construed literally, would conflict with other sections of the same act. Therefore this court has always tried particularly in construing acts of that legislature, to ascertain the legislative intent, and to give force to it. This was announced in the case of *Beatty v. Walker,* 1 Okla. 183.

This court, through Justice Burford, now chief justice, said:

"The legislature which passed the laws in question were

limited in time and were overburdened with work and when we contemplate the vast amount of work accomplished by them, it is not surprising that many conflicts and inharmonious provisions have crept in, and knowing the general history of said legislature it is not always proper that we should apply the ordinary rules of construction and interpretation to their acts. It is evident that in many instances they did that which was never intended, by oversight, and the lack of time to fully consider and compare all the several enactments. Then, again, the adoption of laws from other states, without first harmonizing the same with provisions of laws already enacted, has led to great confusion, litigation and expense. About the only safe rule that we can rely upon in the interpretation of these laws is, that legislative intent and purposes must govern; but we are left in many instances largely to speculation and conjecture as to what was in the legislative mind, or what the legislative purpose was."

And the court was considering this same section 544 when the above quoted language was used; in fact a construction of that section occasioned these remarks of the court.

But we conclude after considering the whole act that by section 544 the legislature fixed the terms of all officers of cities of the first class after the election in 1891, at two years, and it provided for the election on the same day and year of the same officers of the different cities of the territory.

In construing these two sections under consideration there was a difference of opinion among the bar of the territory as to what was the correct interpretation to be given them, and as a consequence thereof a part of the cities elected their mayor and other general officers on the odd numbered years, while others held such elections on the even numbered years, and there was an annual controversy, which usually found its way into the courts over some mayor refusing to

call an election to elect the general officers of the city, and in 1897 (Session Laws of 1897, Okla.) the legislature amended section 544 to read as follows:

"The annual election, in all cities of the first class, shall be held on the first Tuesday in April, 1897, and each year thereafter. At the annual election of 1897, there shall be elected a mayor, city clerk, police judge, city treasurer, city attorney, city marshal, who shall be chief of police, city assessor, treasurer of the school board, street commissioner, and one councilman and one member of the school board from each ward, who shall hold their offices for two years, and until their successors are elected and qualified: Provided; any such city may by ordinance provide for an annual election of any of its officers, and may further provide for the election or appointment of an assistant city attorney and fix powers and duties."

This re-enactment and amendment of section 544 absolutely fixed, so far as cities of the first class then organized was concerned, the annual election thereof, on the first Tuesday in April of each year, and provided for the election at the annual election in 1897 of a mayor, city clerk, police judge, city treasurer, city attorney, city marshal, who is made chief of police, city assessor, treasurer of the school board, street commissioner, and one councilman and one member of the school board from each ward, and then says that they shall hold their offices for two years, and until their successors are elected and qualified. And then the section continues: "Provided; any such city may by ordinance provide for an annual election of any of its officers, and may further provide for the election or appointment of an assistant city attorney, and fix powers and duties."

This last clause gives cities of the first class the right by ordinance to hold annual elections for the selection of the

officers named, but without such ordinance they hold for two years. It will be noticed from a careful reading of this section, as amended, that it wholly fails to provide for the election at any time of one councilman and one member of the school board from each ward, but as to the effects of this omission we are not called upon to determine in this action.

Judging from the history of this legislation, we are of the opinion that the legislature intended to make city elections uniform all over the territory; and so far as those cities which were organied in 1897 are concerned, there can be no question but that the officers for whom all of the city votes must be elected in the odd numbered years. But plaintiff contends that this is not true as to cities which were not organized at that time. With this view, however, we cannot agree. The legislature was aiming at uniformity, as before stated, and it intended to vest the power of selecting officers in the people.

This it has done. In some of the states the first officers of a newly incorporated city or organized county are appointed by the governor, or some other appointing power, and there is a provision that all the offices so filled by appointment shall be filed by election at the next annual or general election. It has been held in Kansas that this means that all of the officers so appointed shall be elected at the next general election, regardless of whether the regular terms would have expired at that time, and while the Kansas cases may be distinguished from the decisions of other states on account of certain statutory provisions, yet it is generally admitted that the supreme court of Kansas has held to the theory advanced by plaintiff. We will, therefore, not attempt

to distinguish them, but will decide this case upon our own statutes, which is different from that of Kansas; but even though they were the same this court is not bound by its interpretation. Under the provisions of section 541, the people have selected their own officers for the city of Lawton. The terms of the respective officers, under the statute, expire at stated times. One councilman and one member of the school board probably should have been elected at the election in the spring of 1902, but the city clerk and other officers whose terms expire on odd numbered years should hold over till the spring of 1903. To illustrate, if the city of Lawton had been organized and the first election held after the annual election in 1902, then at the annual election in 1903, the mayor, city clerk, and all officers for whom all the voters of the city vote, should be re-elected. While the strict letter of section 541 includes all officers, we are of the opinion that the legislature intended that only such of the city officers whose terms of office would expire at the next annual election, should be elected at that time, and this is the construction which we place upon it. Voller's term of office would not have expired until the annual election in the spring of 1903; and he having absconded, the office became vacant, and Jacobs was in law appointed to fill out his unexpired term. This construction seems the more reasonable when we take into consideration the purposes of the two sections. Section 541 provides for an election to fill for the first time the city offices which are vacant, so that the city may exercise its powers as an incorporated city, which can only be done through its duly elected or appointed officers, while section 544 as amended fixes unqualifiedly the terms for which the respective officers shall be elected, and the time of such elections; and

regarding the term for which the respective officers shall serve, in case of conflict the provisions of section 544 would prevail over those of 541 because it relates expressly to that particular matter, and is a later enactment of the legislature. The law when taken together did not authorize the election of a city clerk at the election in the spring of 1902, and the fact that practically all of the voters of the city participated in an election of a city clerk cannot affect the defendant's right to hold his office to the end of his term.

In the case of *Commonwealth ex rel. Ross v. Baxter*, 35 Pa. St. 262, the supreme court of Pennsylvania, in speaking of an attempted election of a person to an office which was being regularly filled by one who had been duly commissioned, and whose term had not expired, said:

"The office was therefore, not vacant in January, 1860, and the election then held by the people was irregular and futile. Even if every voter in the township had voted for another, it would have had no effect. Majorities go for nothing at an irregular election; we cannot regard them as majorities, for it is the right of orderly citizens to stay away from such elections."

The officers elected at the first election were elected to fill out unexpired terms—that is to say when the governor proclaimed Lawton to be a city of the first class, the offices existed and were vacant and the officers were elected to serve the remainder of the two years, and until the annual election for the re-election of such officers. (*Walsh v. Commonwealth*, 89 Pa. St. 419, 33 Am. Rep. 771.) Quite a list of authorities are cited by counsel, all of which we have examined, and they strengthen us in the view we have taken.

The plaintiff's petition fails to state a cause of action,

and therefore the demurrer should be sustained, which is hereby ordered, and judgment of dismissal entered at the costs of the plaintiff.

Hainer, J., dissenting; Beauchamp, J., absent; all the other Justices concurring.